**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

DANIEL CROCHET                            CIVIL ACTION

VERSUS                                      NUMBER: 13-3106

JERRY GOODWIN, WARDEN            SECTION: "B"(5)

<u>ORDER AND REASONS</u>

Before the Court is Daniel Crochet's ("Petitioner") petition pursuant to 28 U.S.C. § 2254 for a writ of *habeas corpus*. Respondent, Mr. Jerry Goodwin, filed an answer and memorandum in opposition to the petition. Petitioner filed a memorandum in opposition to Respondent's answer and the petition was referred to the Magistrate Judge. Magistrate Judge North issued a Report and Recommendation on May 16, 2014, wherein he recommended the petition be dismissed with prejudice. Petitioner timely filed objections to the Magistrate's ruling on May 30, 2014 (Rec. Doc. No. 12).

**IT IS ORDERED** that Petitioner's Objections to the Magistrate Judge's Report and Recommendation are hereby **OVERRULED.** For the following reasons, the Magistrate Judge's Report and Recommendation is hereby **ADOPTED,** and Petitioner's petition for federal habeas corpus review is **DISMISSED WITH PREJUDICE** without merit.[1]

---

[1] We are grateful for work on this case by Nicholas Norris, a Tulane University Law School extern with our Chambers.

Causes of Action and Facts of Case:

The petition arises out of Petitioner's incarceration at the David Wade Correctional Center in Homer, Louisiana. On September 14, 2007, Mr. Crochet was charged by bill of information with aggravated burglary pursuant to Louisiana Revised Statute 14:60.[2] He pled not guilty on September 17, 2007.[3] Crochet subsequently withdrew his plea of not guilty and pled guilty to the aggravated burglary charge on January 28, 2008.[4] The prosecutor gave the following note of evidence at the time of the guilty plea:

> With respect to Mr. Crochet, on September 6th, 2007, he entered 595 Brookmeade Drive, a home belonging to Raymond Liss. And the Bill of Information had previously listed Philip Trupiano as the owner, so I'm going to change that on the Bill. And he armed himself with a weapon while he was inside. He was apprehended inside the residence.[5]

The trial court sentenced Crochet to fifteen years imprisonment at hard labor with credit for time served, to run concurrently with all sentences being served. On the same date, the State filed a multiple offender bill of information charging Crochet as a second felony offender. Upon Crochet's guilty plea to the

---

[2] State Rec., Vol. 3 of 4, Bill of Information, Twenty-Fourth Judicial District Court for the Parish of Jefferson; Rec. Doc. No. 1, Exhibit 5.

[3] *Id.*, Minute entry dated 9/17/2007.

[5] *Id.*, Transcript of Guilty Plea and Sentencing held 1/28/08, p. 91.

multiple offender bill, the trial court vacated the previous sentence and imposed a sentence of fifteen years imprisonment at hard labor with credit for time served, to run concurrently with all sentences being served.[6]

Crochet appealed to the Louisiana Fifth Circuit Court of Appeal. His counsel filed an *Anders* brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), seeking to withdraw as counsel of record.[7] Crochet filed a *pro se* supplemental brief, asserting two claims: (1) ineffective assistance of trial counsel; and (2) excessive sentence.[8] On February 15, 2011, the court of appeal affirmed his conviction and sentence and granted counsel's motion to withdraw.[9] The court of appeal rejected his excessive sentence claim because the sentence was imposed in accordance with a sentencing agreement, and it imposed only the minimum penalty term. The court declined to review the ineffective

---

[6] *Id.*, Waiver of Rights– Plea of Guilty Multiple Offender - La. R.S. 15:529.1 entered 1/28/08 (Rec. Doc. No.1, Exhibit 7); Minutes of hearing 1/28/08 (Rec. Doc. No. 1, Exhibit 8); see also Transcript of Plea and Sentencing, pp. 16-18 (Rec. Doc. No. 1,Exhibit 9). The transcript reflects that two defendants, Daniel Crochet and Arthur Lopez, appeared before the trial court, represented by their respective attorneys, for entry of guilty pleas and sentencing on January 28, 2008.

[7] Rec. Doc. No. 1, Exhibit 18.

[8] *Id.*, Exhibit 21.

[9] *State v. Crochet*, 2010-387 (La.App. 5 Cir. 2/15/11), 61 So.3d 725.

assistance of counsel claim. Crochet did not seek direct review to the Louisiana Supreme Court.

On June 27, 2011, Crochet filed an application for post-conviction relief in the state district court.[10]   In that application, he asserted: (1) La. Rev. Stat. 14:60 is unconstitutionally vague, and (2) his counsel was ineffective in (a) failing to object to the defective bill of information on the charged offense: aggravated burglary; (b) advising him to plead guilty before investigating and discovering that the evidence did not support the charge of aggravated burglary; (c) failing to object to the multiple offender bill of information based on improper identification in the multiple bill and invalidity of the guilty plea to the predicate offense; and (d) committing cumulative errors that rendered Petitioner's guilty plea involuntary.[11]

---

[10] Rec. Doc. No. 1, Exhibit 24; *see also* State Rec., Vol. 2 of 4, Uniform Application for Post-Conviction Relief dated June 27, 2011. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered filed as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date. Here, petitioner's *pro se* post-conviction relief application was timely filed. It bore a signature date of June 27, 2011, a notary signature of June 30, 2011, and a file-stamp date of July 12, 2011.
[11] *Id.*; also at Rec. Doc. No. 1, Exhibit 24, Memorandum in Support of PCR application.

Kevin Boshea subsequently enrolled as counsel for Petitioner and filed a supplemental brief with additional argument on these claims.[12] On January 24, 2012, the state district court denied relief on the merits except as to the ineffective assistance of counsel claim regarding the multiple bill, which it rejected as procedurally barred under Louisiana Code of Criminal Procedure Article 930.3.[13] Crochet's retained counsel sought supervisory writs to the Louisiana Fifth Circuit Court of Appeal, asserting: (1) La. Rev. Stat. 14:60 is unconstitutionally vague; (2) the evidence was inadequate to support the elements of aggravated burglary; and (3) ineffective assistance of trial counsel in failing to object to the multiple offender bill.[14] On April 25, 2012, the court of appeal issued an order denying the first two claims on the merits and rejecting the third claim as non-cognizable on post-conviction review.[15] Counsel for Crochet filed a writ application to the Louisiana Supreme Court raising the same claims.[16] On November 21, 2012,

---

[12] Rec. Doc. No. 1, Exhibit 26.

[13] *Id.*, also at Rec. Doc. No. 1, Exhibit 30, District Court Judgment denying post-conviction relief, No. 07-5332 "E" (1/24/12).

[14] Rec. Doc. No. 1, Exhibit 31.

[15] State Rec., Vol. 2 of 4, *State v. Crochet*, 2012-245 (La. App. 5th Cir. 4/25/12).

[16] Rec. Doc. No. 1, Exhibit 32.

the Louisiana Supreme Court denied relief without stated reasons.[17]

On May 17, 2013, Crochet's retained counsel filed his federal application for habeas corpus relief. In his application, Crochet asserts he received ineffective assistance of counsel because trial counsel: (a) erroneously advised him to plead guilty to aggravated burglary and (b) erroneously advised him to enter a plea of guilty to the multiple offender bill. Crochet argues that the advice in both instances was based on counsel's inadequate investigation and review of the evidence in this case, which would have shown there was insufficient evidence to support either an aggravated burglary conviction or second felony offender status. The State filed a response conceding that the federal application is timely. The record also demonstrates that the claims were properly exhausted.[18]

---

[17] State Rec., Vol. 4 of 4, *State v. Crochet*, 2012-1158 (La. 11/21/12), 102 So. 3d 52.

[18] The State asserts Petitioner's first claim is unexhausted. The Magistrate Court found, however, that the substance of that claim was "fairly presented" to all of the state courts in the context of ineffective assistance of counsel in failing to recognize the insufficiency of the evidence when advising Petitioner to plead guilty to aggravated burglary. 28 U.S.C. § 2254 (b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275-78 (1971). As evidenced by the reasons for judgment issued by the state district court and the Louisiana Fifth Circuit, the issue was presented to, and addressed by, the state courts. The same issues were briefed to the Louisiana Supreme Court, who denied relief without stated reasons.

Law and Analysis:

I.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).[19]

A state court's determination of factual issues is presumed to be correct, and a federal court gives deference to such state determinations unless "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Federal habeas courts defer to state court determinations of both questions of law and mixed questions of law and fact under 28 U.S.C. § 2254(d)(1), unless the determination "was contrary to...clearly established Federal law...or...involved an

---

[19] The AEDPA went into effect on April 24, 1996 and applies to *habeas* petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998).

unreasonable application of...clearly established Federal law." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A decision is "contrary to" clearly established Federal law if the state court's conclusion is the opposite of that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than the Supreme Court on a "set of materially indistinguishable facts." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001) (*quoting Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

The "unreasonable application" standard requires the federal habeas court to simply ask whether the state court's determination is objectively unreasonable. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002), *cert. denied, sub nom, Neal v. Epps*, 537 U.S. 1104 (2003).  Petitioners bear these burdens. *Price v. Vincent*, 538 U.S. 634, 641 (2003)(*quoting Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002));*Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

This Court reviews *de novo* the portions of a Magistrate Judge's Report and Recommendation to which a Petitioner objects. Fed. R. Civ. P. 72(3).

II.  Analysis

Ineffective Assistance of Counsel as to Advice to Plead Guilty in the Instant Case

Petitioner alleges he was denied his constitutional right to the effective assistance of counsel when trial counsel advised him to plead guilty to the charge of aggravated burglary. He contends this advice was manifestly erroneous due to trial counsel's late appointment and lack of independent investigation into the case.

Petitioner's right to counsel had attached, and his plea hearing was a critical stage at which he was entitled to both the presence and effective assistance of counsel. *See U.S. v. Wade*, 388 U.S. 218, 229-31 (1967). A petitioner may raise an ineffective assistance claim in the plea context, however, only with regard to claiming it affected the voluntariness of his plea. *U.S. v. Cavitt*, 550 F.2d 1226, 1229-30 (5th Cir. 1985).

The U.S. Supreme Court has propounded a two-pronged test for judging ineffective assistance claims: (1) deficient performance, and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984). These prongs are mutually dependent: if Petitioner fails to prove one, there is no need to review the other. *Id*. at 691-2.[20] This Court, however, will review both.

Under the deficient performance prong, the burden rests on Petitioner to demonstrate that, under the circumstances, counsel's performance in rendering the advice to plead guilty

---

[20] The Court explains that without a showing of prejudice, no 6th Amendment violation has occurred.

fell below the range of competence demanded of other attorneys in criminal cases. *See Id.* at 688-9 (discussing deficient performance in trial context); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)(concerning guilty plea specifically). Thus Petitioner would have to demonstrate that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Furthermore, the U.S. Supreme Court has interpreted §2254(d)'s statutorily imposed deference to state court decisions concerning mixed questions of law and fact to mean that the deficient performance prong requires asking, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). The ineffective assistance inquiry, in the § 2254 context, is thus doubly deferential in judging trial counsel's conduct.

Petitioner was a repeat offender confronted with significant and compelling proof of his guilt: he was found at the crime scene, and he had confessed his crime to the police. (Magistrate Judge's Report and Recommendation, pg. 16). The State offered him a fifteen year sentence for this aggravated burglary, the minimum he could have received had he been found guilty at trial. (Magistrate Judge's Report and Recommendation,

pg. 16).[21] Given these circumstances, it is reasonable to conclude that Petitioner and trial counsel likely viewed this plea deal as an attractive one. Thus, Petitioner has failed to establish that his trial counsel's performance in advising him to plead guilty fell below the objective standard of competence and thus rendered Petitioner's plea involuntary.

Petitioner also argues that counsel's failure to "independently investigate" Petitioner's case, by viewing the weapons and crime scene, rendered counsel's assistance ineffective. He points to no objective evidence, however, to support this claim and none can be found in the record. (Magistrate Judge's Report and Recommendation, pg. 16). To the contrary, the police report and statement noted that Petitioner was found inside the victim's house with the guns in reach. (Trial Court Record, Exhibits 28 and 29).

Petitioner insinuates that his trial counsel's deficient performance also stems from counsel's failure to investigate Petitioner's story of an unidentified male acquaintance who, as Petitioner alleged in his police statement, held him at gunpoint, told him to steal the guns, and then dropped him off

---

[21] The punishment range for aggravated burglary, pursuant to La. Rev. Stat. 14:60, is imprisonment ranging from one to thirty years. As a second felony offender under La. Rev. Stat. 15:529(A)(1), however, Petitioner would have faced a minimum of fifteen years and maximum of sixty years imprisonment.

at the crime scene and left. (Trial Court Record, Exhibits 28 and 29). Even if this theory were deemed exculpatory, Petitioner produces no objective evidence of this acquaintance's existence, nor does he articulate how proof of this unknown third party's influence would have changed his decision to plead guilty.

## *Strickland* Prejudice Prong

Instead of attempting to prove the *Strickland* prejudice prong, which would require Petitioner to demonstrate that he would not have pled guilty but for his counsel's deficient conduct, Petitioner relies on the *Cronic* prejudice presumption, discussed in the next section. *Id.* at 691-2. Had Petitioner attempted to prove the *Strickland* prejudice prong, this Court is left with the facts adduced in the record: Petitioner was a repeat offender, he was caught at the crime scene, he had admitted his guilt, and he was left only with an implausible claim of duress from an unknown accomplice. It is very unlikely he would have chosen to risk further deprivation of his freedom by proceeding to trial. Regardless, he adduces no evidence in support of any contrary argument.

## Ineffective Assistance Claim under *Cronic* Jurisprudence

The *Cronic* jurisprudence envisions situations in which counsel is appointed so late or is otherwise so incompetent as to have been essentially nonexistent. *U.S. v. Cronic*, 466 U.S.

648, 659-60 (1984). Thus under the *Cronic* "exception," the Court may presume prejudice in the overall *Strickland* evaluation. *Cronic*, 466 U.S. at 659-60.

The Court in *Cronic* discusses various factors in this evaluation, but like Petitioner here, it focuses on preparation- specifically the disparity between the preparation time allotted to the State and that allowed the newly-appointed trial defense counsel. *Cronic,* 466 U.S. at 663-4. In *Cronic*, the Court held that defense counsel's twenty-five days to prepare for a mail fraud trial was adequate, although the state had been building the case for far longer. *Id.*

In support of his *Cronic* argument, Petitioner relies on trial counsel's "omnibus motions"– one of which was a generalized motion to compel discovery– filed on January 28, 2008 (the date of the plea agreement), to suggest that Petitioner did not receive materials to which he was entitled until acceptance of his plea.  The trial court record is clear, however, that Petitioner was appointed counsel and that this counsel "received discovery" on November 5, 2007, about three months before Petitioner's plea agreement.

The same appointed trial counsel appeared alongside Petitioner on December 13, 2007. (Trial Court Record, Vol. 1). Petitioner's argument that the "State likely provided nothing more than the police gist on the November 5, 2007 hearing date"

(Objection to Report and Recommendation, pg. 3), provides mere speculation in the face of these trial court records.

Counsel's appointment date, presence at court hearings, and apparent availability demonstrate that he did not fail to provide meaningful adversarial testing of the State's case through any physical absence.

Petitioner is left with the argument that his counsel's conduct, in failing to investigate the crime scene, was so deficient as to amount to an utter failure to subject the State's case to adversarial testing in accepting a plea agreement for a statutory minimum sentence. This argument remains unsubstantiated by the existence of any exculpatory evidence that such "independent investigation" may have revealed. Petitioner has not demonstrated that he should receive the benefit of the *Cronic* presumption.

Ineffective Assistance as to Multiple Offender Bill Guilty Plea

Petitioner next contends he was deprived of his right to the effective assistance of counsel due to trial counsel's failure to object to the multiple offender bill as containing the wrong name. (See Petitioner's Objection to Report and Recommendation, pg. 5). This claim, however, is procedurally barred pursuant to La. Code. Crim. Proc. Art. 930.3, which prohibits post-conviction review of sentencing errors, including

those committed during habitual offender proceedings. *State v. Cotton*, 09-2397 (La. 10/15/10), 45 So.3d 1030 (*per curiam*).

Evaluating the application of this procedural bar implicates two main considerations: 1) the state law support for the bar at the state level, and 2) whether this state law reasoning offers a state ground that is both "independent of the merits of the federal claim and adequate to support that judgment." *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). Here, the cited statute satisfies these requirements. *See, e.g., Hull v. Stalder*, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept 28, 2000); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D.La. Oct 30, 2012) (Lemelle, J.).

The state law ground for barring review of habitual offender adjudications rests on the Louisiana Supreme Court's reasoning that a "habitual offender adjudication does not pronounce a separate conviction or institute a separate criminal proceeding, but instead 'only addresses itself to the sentencing powers of the trial judge after conviction and has no functional relationship to innocence or guilt.'" *Cotton*, 45 So. 3d at 1030 (*quoting State v. Walker*, 416 So. 2d 534, 536 (La. 1982)).

The court of appeal and state district court agreed that Petitioner's claim was procedurally barred under this reasoning. (Magistrate Judge's Report and Recommendation, pg. 18). The Louisiana Supreme Court denied relief without stated reasons,

but where the last state court judgment does not indicate whether it is based on the merits or procedural default, it is presumed that the court relied on the same grounds as those in the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). The state courts properly held Petitioner's multiple bill claim procedurally barred.

This Court next evaluates whether the state law procedural bar supports a bar in federal court by asking whether the state's reasoning is: 1) independent of the merits of the federal claim and 2) adequate to support the judgment. *Amos*, 61 F.3d at 338.

The test for adequacy of the rule is that it is strictly or regularly followed by the cognizant state court, including those state procedural grounds that are "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Id.* at 339. Codified in Louisiana's criminal procedure and dutifully followed by its Supreme Court, Article 930.3 satisfies the adequacy test. *See, e.g., Hull v. Stalder*, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D.La. Oct. 30, 2012) (Lemelle, J.); *State v. Cotton*, 09-2397 (La. 10/15/10), 45 So.3d 1030 (*per curiam*).

We must next ask whether the state procedural ground is independent of federal claims. Again, it is well established

that Article 930.3 is independent of federal claims so as to support a procedural bar in federal court. *See, e.g., Hull*, 2000 WL 1598016; *Johnson*, 2012 WL 5363327 at *4.

Petitioner has an opportunity to overcome even an independent and adequate state law procedural bar if he can show cause for the default and "prejudice attributed thereto," or if he can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Amos,* 61 F.3d at 339.

To show cause, Petitioner must demonstrate that some outside factor prevented his efforts to comply with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner articulates no such argument. (Magistrate Judge's Report and Recommendation, pg. 20). Further, Article 930.3 does not encompass situations where a Petitioner may, through some external force, have been prevented from raising or preserving a defense on appeal.  It merely establishes the rule that multiple bill proceedings are not reviewable on appeal since they bear no functional relationship to guilt or innocence.

Regardless, Petitioner has not shown any cause for the default. Absent such a showing of cause, the Court need not consider prejudice. *Martin v. Maxey*, 98 F. 3d 844, 849 (5th Cir. 1996).

This leaves the Court to consider whether Petitioner has hurdled this procedural bar by establishing that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue v. Johnson*, 131 F. 3d 466, 497 (5th Cir. 1997) (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Petitioner must adduce evidence providing a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. at 496; *Glover v. Hargett*, 56 F.3d 682, 684(5th Cir. 1995)*; Glover v. Cain*, 128 F. 3d 900, 904 (5th Cir. 1997).

Petitioner has not attempted this argument. He does not claim that, had his counsel objected to the clerical error in the entry of the multiple bill of information, he would have been found innocent of these crimes. Indeed, he never claims he was innocent of these crimes.[22] Rather, Petitioner folds trial counsel's multiple bill oversight into his earlier *Cronic* argument, explaining, "the facts forming the basis of this claim further support Petitioner's contention that his trial attorney did absolutely nothing to prepare for or investigate his case

---

[22] Trial Court Record, Vol. 1: Petitioner's guilty plea to the Multiple Bill contains Petitioner's name in the guilty plea to his present crime, but contains the name "Arthur Lopez" as the defendant in the Multiple Bill's prior convictions: multiple counts of auto burglary under La. R.S. 14:62 in case number 07-2389 in the 24th Judicial District Court of Jefferson Parish. Trial Court Record, Vol. 1, however, also contains Petitioner's May 25, 2007 (case number 07-2389 in the 24th Judicial District Court of Jefferson Parish) plea colloquy in which he pled guilty to the auto burglaries that were the prior offenses in his multiple bill guilty plea. Petitioner pled guilty to these prior crimes, regardless of the clerical error contained in the multiple bill.

and utterly failed to subject the prosecution's case to any semblance of adversarial testing." (Petitioner's Objection to Report and Recommendation, pg. 5). This argument does not approach the "miscarriage of justice" requirement, and the record similarly fails to support such a showing of Petitioner's actual innocence on the underlying conviction.

Mr. Crochet has thus failed to overcome the procedural bar, and this claim of ineffective assistance as to the entry of the multiple bill must accordingly be dismissed.

Conclusion

The Petitioner's right to the effective assistance of counsel was not undermined at any stage of the proceedings leading to his fifteen year plea agreement to aggravated robbery. His argument that he received ineffective assistance in making this agreement fails both prongs of the *Strickland* test: deficient performance and prejudice. On the evidence before it, this Court does not find that Petitioner's trial counsel's performance fell below that of a reasonably competent criminal defense attorney under the circumstances. The State offered the minimum statutory sentence to a multiple-offender defendant who was found at the crime scene and later admitted to his crime. Fifteen years likely seemed an attractive deal.

Petitioner fails to show where his trial counsel's allegedly deficient performance prejudiced the outcome of this

case. In the plea context, this would have meant demonstrating that he would have rejected the plea deal in favor of going to trial. Again, given the circumstances and evidence before him, it seems unlikely that Petitioner would have made this decision. Petitioner makes no argument on this prejudice prong, however, choosing instead to rely on the *Cronic* prejudice presumption.

Petitioner fails to establish the *Cronic* presumption. The *Cronic* jurisprudence rests on the idea that if a criminal defendant's trial counsel's lack of time or preparation for trial was so prejudicial as to render him essentially absent, then the defendant is entitled to a presumption of prejudice.

Petitioner adduces no evidence to establish this presumption. His trial counsel was appointed three months before the plea was entered, and this is also when he received discovery, according to the trial court's record. Petitioner's vague references to the possibility of independent crime scene investigation yielding exculpatory evidence are unsubstantiated by any objective proof in the record.

Petitioner's trial counsel was hardly absent within the meaning of *Cronic*. Petitioner cannot show counsel failed to provide meaningful adversarial testing of the State's case.

Finally, Petitioner's claim of receiving ineffective assistance of counsel in pleading guilty to the multiple

offender bill is barred by an independent and adequate state law procedure, and it therefore cannot be reviewed by this Court.

Accordingly, the Magistrate Judge's Report and Recommendation is **ADOPTED**. The petition for issuance of a writ of *habeas corpus* is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 8th day of October 2014.

UNITED STATES DISTRICT JUDGE